Good morning. May it please the court, my name is Nadia Wood and I represent appellant Zachariah Marcyniuk. In this capital case, a prosecutor and a defense attorney removed 39% of the veneer outside of the public view and without Mr. Marcyniuk's knowledge. The state exercised 11 out of 15 of its off-the-record strikes against women, the defense 9 out of 15 against men. The official record contains no mention of these off-the-record strikes, even though it was certified as true and complete. Mr. Marcyniuk's subsequent attorneys did not raise any issues related to this off-the-record jury selection, either on direct appeal or in state post-conviction, resulting in default of his claims. Even though Mr. Marcyniuk raises several claims in his brief, today I would like to focus on the question of whether the district court erred when it denied Mr. Marcyniuk a hearing to show cause of prejudice to excuse the default of his claims in state court. On the cause point, I noticed that the state trial judge has a practice of doing this only in capital cases, but has done it before. Is this something that is common knowledge in Arkansas, that attorneys should know that this is what the district judge does? No, Your Honor. It's a practice specific to this judge, and this is precisely why a hearing would have been helpful to establish whether the post-conviction subsequent counsel has encountered cases from this judge before and has seen this happen. If they had a reason to suspect that this was happening, perhaps they had a reason to go look for the records, but that's not what happened here. The question was common knowledge. Your answer was more legal. In seeking a hearing, did you present any evidence or make any showing that there was no such common knowledge? No, Your Honor. We submitted declarations from the court clerks saying that this is a practice that Judge Story does in his courtroom. He handles things differently. So you didn't address Judge Strasse's question? Yeah, and the reason why I'm asking it is because if everyone knows, this is, you know, and I'm hypothesizing here, everyone knows this one judge has this weird practice, but all the defense lawyers in Arkansas know it, then cause would be a much harder thing to establish because presumably there would at least be some implication that the attorney would have known at some point to have raised this claim earlier, maybe in post-conviction proceedings. So that's the thrust. I'll give you a chance to address it. To the best of my knowledge, it is not a common knowledge. It is not a common procedure. What's your knowledge based on? We go on the record unappealed. Well, there's nothing in the record containing that it is a common knowledge, Your Honor. It was your burden to make it an issue, particularly under 2254E2. And Mr. Marsnik attempted several times to request to submit additional briefing, not just the hearing, but additional briefing, merits, claims. This would have been an affidavit or declaration, the sort of thing you submit in a support for a claim for attorney's fees, establishing the common knowledge, common practice, common understanding in a local bar. I assume were these death penalty lawyers rookies? The trial attorney or the subsequent attorneys? Yes. The trial attorney handled three of the Kepler cases. And the appellate attorney. The appellate attorney was an experienced attorney. However, both the direct appeal and the state post-conviction attorney practiced out of Little Rock, which is far removed from this remote county where this judge practices. And this has never come up in a published case or any kind of opinion where you could look and say this was raised before. This has come up before. To go back to the question of the hearing, the hearing would have shown lack of common knowledge and lack of knowledge by the direct appeal and the state post-conviction counsel about this unique procedure happening in Judge Story's courtroom. This hearing also would have shown that false certification of the record as true and complete while withholding major part of the records related to the jury selection was the cause that would have excused the default of Mr. Marcink's claims. Now, the lack of knowledge is an interesting part of it. You make two claims for the cause. You say one is state interference, the other one is lack of knowledge. I'm not sure that the state interference actually works because I don't think that anything he said was false or somehow interfered. That would be where the state goes out and grabs it and takes it away or hides it or something like that. I think this is just one of those cases where there is no way to know, perhaps, might be the stronger argument. But I want to get your take on why you think there would be state interference here. Well, for two reasons. First, the clerk certified that the record was true and complete, and certainly certain parts of the jury selection were included, motions related to the jury selection, the voyadaya related to the jury selection during paneling. But these parts weren't, even though the court certified it as complete. And the next step, when you go to the direct appeal, the state has the obligation to review the record and ensure that it's complete and to provide the Supreme Court with the record that is complete. And that obligation is both under the controlling Supreme Court laws to provide the record of sufficient completeness and under Arkansas statutes that require a complete record. And there are certainly some cases where the attorney general files a notice, files a petition for writ in the Arkansas Supreme Court and says the record is not complete, would like to supplement the record. There is a process for settling the record if the transcript is not available. None of that happened here. What's your best Arkansas case for what a complete record on jury selection is? That would be Rooms v. State and cases. What is it? Rooms v. State, 139 Southwest 3rd, 519, Arkansas 2003. Is that in your brief? It's in our motion to strike the government's 28-J letter. Then we need a 28-J letter. I'm sorry. Then we need a Rule 28-J letter with the citation. It was filed by the government. It was in our motion to strike it. I asked you for a citation, and you gave me a citation, and the citation is not in your briefs, you said. Therefore, we routinely request an Eighth Circuit Rule 28-J letter confirming a citation that is provided in oral argument but not in the briefs. Your Honor, this issue was not raised in the briefs by the government. So what? You raised the issue about what's a complete record under Arkansas law, and I asked for your best case. Your Honor, we can file a 28-J after the sorrel argument, if that would be helpful to the Court, containing the citation. That's routine. Probably it happens in every argument week, in my experience. I would be glad to do it, Your Honor. Judge Struss, did I answer your question? The Attorney General, who did not. Yeah, I mean, one of the things that's hard about this is the way I understand it is that the trial judge doesn't make it part of the official record. That's his practice. And so when you certify that the official record is true and complete, that's actually a truthful statement because these proceedings are not part of it. So it's kind of a circular argument. We're kind of going around in circles, which is why I don't know that I buy the state interference argument. So if you have a response to that, fine. It was more of a statement than anything else. Well, just because this is this particular judge's practice doesn't mean that the certification is proper. The circuit court certainly has authority to include this and should include this. That's the question of state law. The question of whether the state provided. How the state, by statute and court rule and practice and procedure, accomplishes the intricate and time-consuming and cumbersome job of selecting a constitutionally appropriate trial jury is in the hands of the state. The definition of a voir dire panel is defined by state law. The definition of what constitutes voir dire is defined by state law, right? What federal statute or constitutional provision says this is the way states must structure their jury selection process? Well, certainly the right of the accused to be present and participate in the jury selection is a matter of federal law. And there are a number of federal cases, Supreme Court cases, going back quite a ways to establish their right. Does the defendant have the right to personally participate when the clerk spins the wheel and selects the pool for an upcoming group of cases? Your Honor, that is a ministerial function of the court where defendant's participation wouldn't make any difference. Here we're dealing with peremptory strikes where his input would have made a difference. You're calling it a peremptory strike. And maybe that's the way the judge described it. But I would say it was a final step in defining the voir dire panel. And these 30 potential jurors weren't in the panel. And in a procedure that gave the defendant a considerable tactical advantage in jury selection. So the notion that this was unfair, I can't even understand the argument. Well, he did not get to participate in the selection of the jury. He didn't get to pick the initial wheel either. He didn't get to pick the, if they pick them for a month and then they have a panel for a week and there's a weeding and you're constantly sifting and winnowing down ultimately to the 12 who sit on a particular jury. And at what point does the defendant's participation become constitutionally mandated? Well, Your Honor, in this case, the veneer was complete. The attorney submitted the questionnaires. But that's your assertion. I understand it. It probably, as a practical matter, would be the same assertion would be made by most, if not all, Arkansas attorneys. But we don't have, nobody took this issue to the Supreme Court of Arkansas. And so we don't know. You say, well, if it just would have been raised, it almost certainly would have been reversed on appeal. I don't accept that. That's what the case law shows, Your Honor. What case law? The Arkansas case is reversing for lack of record, for closed courtroom, for defendants inability to participate. That's not this question. This question is at what point in the winnowing of all the prospective jurors does the defendant's right, does the public trial on defendant's right to participate kick in, so to speak? Well, in this case, you brought up whether it's a question of state law. The state of Arkansas certainly has statutes that define the process that we specified in our reply brief. And all of them were violated by this process. You know, lawyers say that all the time about federal statutes. And then the U.S. Supreme Court says, no, you're wrong. Your Honor, the fact that my client was not present also denied him of an opportunity to inform subsequent counsel of this process. Had he been able to be present and participate, he certainly would have alerted subsequent counsel who would have raised this issue, and then the state could have made a decision, and we would have been in a different posture before this court. On the cause issue, why not go back to state court first and try to exhaust it there? Why come to us? Doesn't Arkansas have some procedure that would allow meritorious claims like this one to go in post-conviction again? Your Honor, to the best of my knowledge, this is where we discovered this claim. We decided to pursue this claim in federal court. And we at least should be able to have a hearing to establish what remedies are available. There were some arguments on exhaustion in district court. And while we certainly argued that we could try and go back, this was not the relief that was afforded to Mr. Morsnik in district court. Well, the problem is, is now you run it to procedural default, as the state argued. Lack of exhaustion, although they didn't make this argument. And I'm just wondering whether you could even bring it in Arkansas post-conviction proceedings, whether or not you can have a success of Arkansas post-conviction. I don't know the answer to it. If it was in the first instance, these claims could have been brought in Rule 37 hearing. Reams v. State, it's another case we cited in several of our briefs, does talk about how these claims, especially when there's a fundamental error like this, these claims, even stand-alone claims, not just in effect of a sense of counsel, would have been reviewable in Rule 37. That's why we're arguing that Mr. Morsnik was prejudiced. He did suffer harm. But not subsequent ones. So it sounds to me like you're saying that you probably couldn't go back at this point then to Rule 37? That is my understanding. Okay, I'll probably ask the State the same question. And then when you get to prejudice, I'm going to ask you about that before your time gets up. You make the argument that there's striking based on gender. And my understanding of procedural default prejudice is it's a showing that requires you to show that the proceedings actually would have come out differently, that something different would have happened. And I'm just trying to figure out on a gender, it's not a BATS, a JEB, on a gender claim, how do you make that showing? How can you show that not striking female jurors or striking female jurors, and either way, how that would have changed the proceeding, the outcome? Well, Your Honor, we're looking at, for example, in a public trial claim in an effect of a sense of counsel that came up in Weaver. In Weaver, when the Supreme Court analyzed whether the error was so serious that it resulted in a fundamentally unfair trial, they looked at factors like whether this proceeding was on the record, which in this case it wasn't, and whether the record reflects that there was some harm or some misbehavior by the judges or by the attorneys that resulted from the closure of the courtroom. So I hear your answer being it has to be structural error to get around to overcome that problem. No, Your Honor. Well, that's what Weaver is. It's a structural error, defining structural error case. Weaver talks about public trial in effect of a sense of counsel. It does talk about a showing of prejudice for structural error, which right to public trial and right to be present certainly are. Fundamentally unfair versus changing the outcome. Sounds to me like that's the line between non-structural and structural error. They, even in the Strickland prejudice, which is non-structural error, can be shown whether the trial was fundamentally unfair. And I would like to reserve the rest of my time for rebuttal, please. How was, what was the fundamental unfairness? There were, the lawyers, if it's true that the lawyers exercise their peripheries based on stereotypes and general understanding, which is the way we, the lawyers, trial lawyers typically get a jury that's sort of demographically middle of the available pool. Where's the fundamental unfairness if that's what happened? If it's true that each side functioned on what you consider horrible, prevailing stereotypes, where's the result if they balance, if that balances out, where's the fundamental unfairness? Your Honor, Weaver specifically states that the fundamental unfairness can be demonstrated by either the prejudice to the defendant or by pervasive undermining of the systemic requirements of fair and open judicial process. I would argue that excluding women is that pervasive. That's structural error. I'm asking you, what's the prejudice to the defendant? He did not get to participate in the process. The balance of the strikes that the State allows, that's where the government gets fewer strikes than the defense, to the point where they need to exercise all of the peremptory strikes while on the record. The harm, which this Court in a word called concrete and immeasurable from not being able to come face-to-face with his jurors, that is actual harm. The result of his subsequent proceedings being different, this Court also says results in prejudice to the defendant. Thank you, Your Honor. Mr. Steinberg. Your Honors, and may it please the Court. Oh, sorry, my mask is still on. I'm Asher Steinberg, an Assistant Solicitor General for the State of Arkansas, and I represent the State in this case. Your Honors, in this habeas, in this capital case, Mr. Marcinek seeks a writ of habeas corpus because he and the public were not present when counsel struck 30 names from a list of potential veneering members. If Marcinek had objected to that procedure at trial and on appeal, he may have received a new trial without showing prejudice. But on this posture, where the Court is left to review a collection of procedurally defaulted claims and derivative ineffective assistance claims, Marcinek has to show both cause and prejudice to overcome his defaults and obtain relief. Now that he discovered this procedure, could he go back to Arkansas and file a post-conviction, or would that be futile or off-limits to him? So I think the only claim that is potentially cognizable in post-conviction is his ineffective assistance claim. He already had one in post-conviction proceeding. He might be able to seek to recall the mandate affirming the denial of post-conviction relief. I don't think that's something that he has to exhaust under a Sullivan v. Bortel. I think that's an extraordinary procedure, not part of the ordinary court's proceedings. What was that procedure? This hypothetical request to recall the mandate denying post-conviction relief. How about quorum nobis? I don't believe the quorum nobis recognizes the kinds of claims that he's asserting now. So it sounds to me like it would be futile to go back to state court. That's our position, yes. I'd like to start with cause, I suppose, and some of the court's questions about cause. We don't believe that the default occurred on appeal or in post-conviction, except with respect to the ineffectiveness claim. But just assuming that and dealing with this claim of state interference misrepresentation. We don't think the clerk did anything wrong in the way she compiled the record. So Ms. Wood and I agree that there is a rule that normally accepts jury selection matters from a criminal record. In an Arkansas Supreme Court case, the Supreme Court rules 3-4. And then it is true that in a death case, there is a mandatory review of a number of issues. But the rule that fleshes that out says that what you look at are rulings on motion, adverse rulings on motions, objections, and requests. And her whole claim is that there were no objections to this procedure, that the judge accepted every name that was struck. And so I don't think that there was any requirement to put this off-the-record proceeding into the record. And I think that when the clerk said, this is a true and complete record, she's right under Arkansas Supreme Court rules. Was this common knowledge? And is it common knowledge that this one judge has this weird procedure? It may be common knowledge in that county, but we don't know how many death penalty cases he heard. We're actually only aware of two where this has happened.  And the State doesn't really argue, I think, that he – I mean, they would argue that his attorney knew, his trial attorney. His trial attorney, yes. But I don't get the State arguing that there's any evidence that he actually knew or that post-conviction counsel knew. There's no evidence on that. But I don't think that they can argue that the State is the cause of this default if the default happened on appeal, when they also at the same time say the trial counsel was ineffective for failing to create a record of this procedure and had he only insisted that it go in the record, then it would be in the record. Although you can allege things in a habeas petition in the alternative. It's strange to do that. But if he doesn't know what happened, it wouldn't be so strange to have him argue in the alternative. So I don't read these as alternative allegations. I mean, I think that's a very large part of their ineffectiveness claim, that trial counsel was ineffective and this resulted in the Strickland prejudice because if only these materials had been in the record, then they would have prevailed on appeal. Let me tell you what concerns me about this case. What concerns me about this case is it seems to me that this is exactly why our jury trial guarantee and our public trial guarantee are in the Constitution. If you go back and you look at the history, what this is all about is trying to get rid of secret procedures, things that are happening in secret. So the star chamber, right, where they come out and they say, surprise, you're convicted, and you don't see any of the proceedings that happen. And although this was only a small portion of the overall proceedings, given the current composition of the Supreme Court, I wonder whether the court's going to be, and we have procedural default, but this seems to me to be one of those secret procedures that procedural default, cause and prejudice is exactly for, is to resolve some of these strange issues that a defendant wouldn't know about. I'll give you a chance to respond. Again, it's more of a statement than anything else. So I understand your concerns on the merits of these claims. And in fact, it is the State's view that more likely than not, if the trial court is going to say we want the parties to select the veneer, the public ought to be present, the defendant ought to be present. However, we do have to show prejudice. We have to show prejudice to overcome the procedural defaults, actual prejudice. And as Judge Loken noted, and as this Court held in Hunt v. Houston, even when you have claims of structural error, you have to show actual prejudice, a reasonable likelihood that the outcome would be different. I don't understand her to even argue that that's the case, and I don't see how it could possibly be the case. Well, let me ask you this. I know that this argument isn't made, but we've spent a lot of time thinking about this. Suppose that counsel was just lazy, trial counsel. Defendant's trial counsel was just lazy, and he said, you know what, this is a dumb procedure. I'm just going to start striking people in alphabetical order. It's easy. So I'm going to do all the A's first, all the B's first, and all the C's first. As it happens, somebody in the A's had a criminal conviction and would have been very sympathetic to the defense. And so the argument would be ineffective as sensitive counsel because counsel did a terrible job with this. Don't you think there would be prejudice at that point? It sounds like a possible ineffectiveness claim, except that on the facts of this case, I don't think there was ever any reasonable possibility of a different outcome. However many friendly jurors you put into this jury, there's essentially a concession of guilt. There are aggravating circumstances that are undisputed and are very severe, and I don't think that there are mitigators that she's arguing a different jury might have found. The jury actually found a number of mitigators, didn't think that they could possibly outweigh the prior aggravated assault of another young woman and the extremely brutal way in which this murder was convicted, committed rather. But that would be a different case, and it would at least present, I think, a serious question on deficient performance. What about a situation to bring it more in line with what she's actually alleging, although this isn't exactly on point? Suppose that the judge had made the determination, we don't have enough women on this jury, so I'm not going to allow you to strike any women. So the pool of people you can strike is only men, and that accounts for the gender-based strikes that she's alleging. That would be a gender discriminatory rule, certainly. I think that you still have to show actual prejudice on this posture, where we have a default and we're running these things through ineffectiveness. And so I don't think that you could get there, and I don't think that that would even rise to the level of fundamental unfairness if you assume Weaver's assumption is correct on how you should understand strickling prejudice. I just wonder whether we should have an evidentiary hearing here to figure some of this out. We have a secret proceeding that nobody knows about. We don't know what happened. I came up with crazy hypotheticals that are unlikely to be the case, but what if some of those things happened? I don't know how you would, without knowing what happened, I don't know how you would show prejudice. I think those crazy hypotheticals are contradicted, with respect to your hypotheticals, contradicted by the record that we've got. We actually have a list of names. It's not alphabetical. We don't have a situation where exclusively women are being struck or where the court is saying you're only allowed to strike members of one particular gender. Actually, we have one party striking predominantly one gender, the other party predominantly striking another. I would like to note that when they get to peremptories, those gender balances switch, and so I don't actually think there's evidence that these parties were engaged in gender discrimination in the real world. But I think the hypotheticals are just not on the table, and I also do believe that even under your hypotheticals, we don't have a reasonable likelihood of a different outcome and we don't have a fundamentally unfair proceeding. How would one, and I'm sorry for dominating, how would one show prejudice with a gender discrimination or a random strike, how would you show prejudice in a case like that in the state's view? I would actually mention a couple cases that are not in our briefs. If you'd like a letter, I'll file one. The Supreme Court's very first cause and prejudice cases where it announces this test, interestingly enough, are claims of undisputed racial discrimination in the composition of grand juries, but these objections weren't made. They said you had to prove actual prejudice, and then they block quote the district court's ruling explaining why he doesn't think there is, and he says, well, you know, the facts are very strong, proven guilt. The grand jury indicted white people as well as African Americans, and the case had no racial overtones. So I think if you change those factors, you have a close case, you have a case that does have gender overtones, then you could say, you know, with a more friendly jury, a jury that might be more sympathetic to the defendant, though we have to avoid the risk of, you know, gender stereotypes in doing that analysis, there is at least a reasonable possibility, if not a probability, of a different outcome. I don't think you ever get there here where we have overwhelming evidence of guilt, undisputed aggravators, and I don't think there's a big fight about mitigating circumstances. I don't know where I would like to turn next. I think I'll talk about the ineffectiveness claim and Weaver. So I think Weaver is the only place where she can say the prejudice standard has become a bit lower than proving actual prejudice, which she has to do to overcome the procedural defaults of the underlying claims. And on Weaver, I would say a couple things. One, the State is fine if you make the same assumption the Supreme Court made in Weaver, say, assume without deciding that fundamental unfairness can result in strickling prejudice, but we would encourage you not to hold that in this case. I think that reading the Weaver opinion itself shows that this is not a great idea. So the majority opinion doesn't offer any argument for why this ought to be the law. They just say Weaver made this argument. The State advances the traditional outcome-determinative theory of strickland prejudice. We don't have to decide. There is a phrase in strickland that mentions fundamental unfairness, so we'll assume this. And then three of the justices in the majority, Alito, Thomas, and Gorsuch, all say they think this assumption is wrong. This is the wrong way to read strickland. It dilutes the prejudice requirement. You could have somehow an effective assistance of counsel where we do not believe that the deficient performance affected the outcome. And then interestingly, the dissenters say that this rule is unadministrable and that it will be very difficult for lower courts to distinguish these structural errors that are fundamentally unfair from the ones that are not, which I think is a fair and accurate point. That said, if you make this assumption, I think that Weaver is pretty close to being on all fours with this case. So Weaver is also a courtroom closure during jury selection. The only people who are allowed to be there are the potential jury members, and the court says that that's not fundamentally unfair. I think the plus factor that Ms. Wood has introduced is the possible appearance of gender discrimination in these off-the-record strikes. I think for one thing, saying that that gets you there and is strickland prejudice is foreclosed by this court's decisions in Young v. Bowersox and Kehoe, where you have likely bats and violations, and the court said, we are not going to find strickland prejudice unless you show that if these African-American jurors or white jurors were on the jury, the outcome likely would have been different, or there's a reasonable possibility, rather, that the outcome would have been different. And I would also note that Weaver specifically disclaims at page 1912 any view on whether when you put bats and violations into an effective assistance claim, that's strickland prejudice. So I don't think that Weaver could have overturned this court's holdings on this point. But finally, if we assume that you've adopted the fundamental unfairness reading of strickland in accord with Weaver's assumption and that we're just starting from scratch, I think that Weaver's taxonomy of rights suggests that discrimination would not lead to fundamental unfairness generally. They say that we have to distinguish between the rights that protect the interests of the defendant and rights that protect interests of others. And the anti-gender discrimination right is a paradigmatic case of right that doesn't really protect the interests of the defendant. It's actually an equal protection claim. The defendant merely has third-party standing to make. So I don't think that we would say that if gender discrimination occurred, that would per se render the trial fundamentally unfair. I would like to say a few words about the facts of the gender discrimination claim, however. So first, I would note, I don't believe that this argument was really made to the district court. There's a reason you don't see this in his opinion. There's also a reason that the only gender discrimination claim he discusses, page 51 of the addendum, is an allegation that the prosecution actually was discriminating against men, whereas today the argument is that he was discriminating against women. Those were the arguments that were advanced below. And the numbers about the peremptory strikes and, sorry, not the peremptory strikes, the off-the-record strikes of potential veneer members. Were they peremptory? I mean, I'm not sure what they were, but the fact that they got to pick them, does that fall under peremptory or are they for cause? I don't know. I mean, I have no idea. I want to see what you think. I'm happy to accept the characterization of them as peremptory because they're not being reviewed for cause. They don't have to offer causes. They select names. Of course, they had reasons that they were striking these people based on the questionnaires that they read. But I'll accept that they're peremptory for purposes of the argument. What I was saying was that these numbers, 11 and 4, 9 and 6, you won't find them anywhere in the district court pleadings. All you will find is a request to just depose the parties, the prosecutor and defense counsel, based on this bare allegation that gender discrimination was taking place. And the more fleshed-out allegation was that in the peremptory challenges, the prosecutor was discriminating against men, which is the opposite of what they argue today. So I don't really think that we can get a reversal based on a position switch. But just taking these numbers up on the merits, the prosecutor did indeed strike 11 women and 4 men in his 15, which sounds disproportionate, but if you look at the list that he's choosing from, which is in the sealed exhibit that you have, that is a very disproportionately female list. 78 women, 42 men. So what he's doing is almost perfectly proportional to the composition of the list. And then when he gets to his peremptories, he disproportionately strikes men, as they claimed with some force below. And as you can see in pages 48 to 50 of the appendix, their appendix where they lay out these numbers. So I don't think we can see any pattern on the prosecutor's part. Then you take defense counsel. He strikes 9 men, 6 women, barely over 50-50. Then when he gets to his peremptories, he strikes 7 women and 1 man. Ultimately, he ends up striking 3 more women than men. So again, I don't see a pattern, any kind of clear pattern of gender discrimination there. And it would be very strange to say that, you know, this very weak claim of gender discrimination rises to the level of fundamental unfairness and strickling prejudice. Let me ask you a question. Really, I think opposing counsel is focused on the evidentiary hearing. In the great brief, I want to say, and this is kind of a side issue, but they brought up the 2254 standards. The real question is, what in the State's view is the standard to get an evidentiary hearing in a procedural default case like this? So we have argued that E-2 applies even to the default. And we certainly argue that it's going to apply to the merits of these claims. And so if there's evidence that they need to win on the merits and they couldn't use it under E-2, then it would be futile to excuse the default and then say, oh, but, you know, we can't use this evidence. So if there's evidence that's missing and they can't prevail without it, ultimately on the merits, then even if you think that you get an evidentiary hearing to excuse procedural default, I would say that you don't take that evidence. But as far as the question of E-2, which is pending to some extent before the Supreme Court, I think we're happy to say you can just review this record and see that it's clear that they will never be able to prevail, no matter how many hypothetical variations of the facts you assume or assumptions you grant. And so don't really worry about E-2 at this point, that either way the defendant doesn't get an evidentiary hearing. Right, right, and we would prefer a decision before Shin comes out. But if you think that's essential to your decision, you know, you can wait for Shin. I'd just like to say in closing, then, that I think Ms. Wood has an ingeniously layered collection of claims, but they all ultimately fail because these are procedurally defaulted claims and effective assistance claims that require a showing of actual prejudice, one which it's impossible to make, so we would like the Court to affirm. Thank you. Thank you. Ms. Wood for rebuttal. Your Eighth Circuit cases, Burns v. Gammon and Bell v. Lockhart, do say that ineffective performance of counsel that results in denial of first right to appeal is an effective performance. That is actual prejudice because of trial counsel attorneys' actions, not putting this hearing on the record, not putting this election on the record. Mr. Marsnik was prejudiced. The outcome of his appeals and Rule 37 hearings would have been different. That is actual prejudice. We can show this on this record. You cited two cases, and I couldn't even figure out what you were saying. Are they in your brief? Yes, they're in the brief, opening brief, page 58. Give me the names again. I didn't understand. Burns v. Gammon. All right. Bell v. Lockhart. All right. Thank you. You know, why focus on gender discrimination? As the State makes the point, this is a pretty weak claim of gender discrimination. You don't know what happened, and there could have been other possibilities, too. Why focus so much on gender discrimination? Maybe I'm missing something, and you're going to say gender discrimination is really strong. It is not a standalone claim. It is to show that Weaver, unlike the State argument, is actually not all fours. The defendant in our case was excluded. In Weaver, he was present. In Weaver, proceedings were on the record. Here, they were not. I see. In Weaver, the court says, well, there's no reason to think anything went wrong or any misbehavior occurred. Here, it did. And, Your Honor, you're absolutely right. We don't know what happened. We need a hearing. Perhaps there was an objection from trial counsel. Perhaps there was a waiver. We don't know, but likely that the record will show that there was not. And we can also establish the reason for these strikes at the hearing. Thank you, Your Honor. Very good. Thank you. Thank you, counsel. The case raises many difficult and rather new issues. It's been thoroughly briefed. Argument has been helpful. We'll take it under advisement.